CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

2/6/2025

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| SHANNA C.,[1] | ) | |
| | ) | Civil Action No. 6:23-cv-00068 |
| Plaintiff, | ) | |
| v. | ) | REPORT & |
| | ) | RECOMMENDATION |
| | ) | |
| MICHELLE A. KING,[2] | ) | By: C. Kailani Memmer |
| Acting Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Shanna C. ("Shanna") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled during the relevant period between May 2015 and September 2021 and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Shanna alleges that Administrative Law Judge Joseph T. Scruton ("ALJ") erred by (1) failing to properly assess her physical impairments and perform a function-by-function analysis and (2) failing to properly assess her subjective allegations.  Neither party requested oral argument. *See* ECF No. 13.

Having considered the administrative record, the parties' filings, and the applicable law, I find that a portion of the Commissioner's decision is not supported by substantial evidence. Accordingly, and for the reasons detailed below, I respectfully recommend the presiding District Judge **REMAND** the Commissioner's final decision denying Shanna's claim for disability insurance benefits for further consideration.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.
[2] Michelle A. King became the Acting Commissioner of Social Security on January 20, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michelle A. King should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## BACKGROUND

### I.    Procedural History

On April 30, 2020, Shanna filed for DIB alleging disability beginning May 29, 2015. R. 18. Her claim was denied initially on November 13, 2020, and again upon reconsideration on April 30, 2021. R. 96–113. On June 28, 2021, Shanna requested a hearing, which was held by telephone on January 13, 2022. R. 64–95, 129–30. Mark Hileman testified as an impartial vocational expert. R. 88–94. Shanna requested a supplemental hearing, which was held by telephone on September 28, 2022. R. 43–63, 178. On November 1, 2022, the ALJ issued an "Unfavorable Decision" analyzing Shanna's claim under the familiar five-step process,[3] finding that Shanna was not under a disability from May 29, 2015, through September 30, 2021, and denying her claim for benefits. R. 15–42.

### II.    Medical History for the Relevant Period[4]

Shanna was born on January 10, 1982. R. 34. The record of her relevant medical history begins on June 11, 2014, when she saw Dr. Nissen at Village Family Physicians for fatigue and cold intolerance. R. 639. She was diagnosed with fatigue and advised to stop

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a *prima facie* case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the national economy. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

[4] For purposes of this report and recommendation, the "relevant period" is May 29, 2015 (Shanna's alleged disability onset date) through September 30, 2021 (Shanna's date last insured); *see Johnson v. Barnhart*, 434 F.3d 650, 656 (4th Cir. 2005) ("To qualify for DIB, [the claimant] must prove that she became disabled prior to the expiration of her insured status."); 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a).

smoking. R. 641. Shanna returned for a follow-up appointment on September 24, 2014, for fatigue, stress, and depression; Shanna indicated that her symptoms were improving with her antidepressant medications, so Dr. Nissen continued her on Wellbutrin. R. 636–38.

On August 31, 2016, Shanna presented to the care of Dr. Dehli at Village Family Physicians for lower back pain and back spasms. R. 630. She reported that she had been having back pain intermittently for five years. *Id.* Dr. Dehli observed that her range of motion was limited by discomfort and that Shanna had tenderness over her sciatic notch. *Id.* She was prescribed Meloxicam and Cyclobenzaprine and was instructed to complete lower back stretching exercises. *Id.*

On August 9, 2017, Shanna presented to the care of Dr. Cox at Village Family Physicians for severe nausea, belching, constipation, and gas that had been increasing in frequency since the birth of her fifteen-month-old son. R. 624. Shanna felt bloated and had gas pain that was sometimes relieved by deep belches. *Id.* Dr. Cox noted that Shanna's abdomen was tender to palpitation over the epigastric region, but her bowels sounded normal. R. 625. She was diagnosed and treated for epigastric pain and GERD. R. 626.

On September 26, 2017, Shanna presented to the care of Dr. Barritt at Gastroenterology Consultants of Southwest Virginia for abdominal distress and belching. R. 352. Shanna complained of excessive and repetitive belching and distention in her abdomen. *Id.* She did not complain of muscle pain or dizziness. R. 353. Dr. Barritt's examination of Shanna's abdomen was "unremarkable"; there was no tenderness, no distention, and she had normal bowel sounds. R. 354. Dr. Barritt noted that a diagnosis was limited by the amount of available data, so she ordered an esophagogastroduodenoscopy ("EGD") and a gallbladder ultrasound. *Id.* The EGD

revealed mild focal erythema in the antrum. R. 350. A biopsy of specimens obtained during her EGD did not show any "worrisome abnormalities." R. 732 Her ultrasound revealed a 2-millimeter gallbladder polyp, but otherwise, no acute disease. R. 382.

During her follow up visit with Dr. Barritt on October 30, 2017, Shanna reported that she felt her symptoms had improved. R. 735. However, Shanna returned to Dr. Cox at Village Family Physicians on April 30, 2018, for constipation, nausea, and worsening abdominal pain. R. 621. Shanna felt pressure in her abdomen and was having bouts of trapped gas and deep, excessive belching. *Id.* An examination of her abdomen was notable for tenderness to palpitation over the epigastric region. R. 622. Dr. Cox assessed that Shanna was experiencing GERD and prescribed Dexilant. R. 623.

On September 18, 2018, Shanna presented to Dr. Dye at Roanoke Memorial Hospital for chronic midline abdominal pain, excessive belching, and fullness in her stomach. R. 365. Dr. Dye observed mild tenderness to palpitation over the epigastric region, but bowel sounds were normal and there was no distention. E. 367. Dr. Dye requested a gastric emptying study, the results of which showed moderate gastroparesis at the upper limits of grade two. R. 364, 369.

On February 15, 2019, Shanna returned to Dr. Dehli and requested her thyroid to be checked because she was constantly cold. R. 594. After examination, she was newly diagnosed with cold intolerance, vitamin D deficiency, and fatigue. R. 590, 593–94. Dr. Dehli noted that Shanna was not taking Reglan as prescribed because of the risk of tardive dyskinesia. R. 594.

On April 22, 2019, Shanna presented to a nurse practitioner, Ms. Stowers, at Gastroenterology Associates of Central Virginia for reflux esophagitis, belching, and constipation. R. 401. Shanna complained of moderate, constant GERD, severe pressure

4

in her epigastric and chest, constant belching, nausea, bloating, abdominal pain, and early satiety. *Id.* She reported that her reflux esophagitis had no relieving factors, and that she only had one bowel movement per week. *Id.* She also presented with fever/chills, weakness/fatigue, weight gain, back pain, dizziness, numbness, and cold intolerance. R. 402. Ms. Stowers noted generalized tenderness throughout Shanna's abdomen upon examination. R. 403. Ms. Stowers referred Shanna for an EGD and a colonoscopy, prescribed Motegrity for constipation, recommended a diet modification, as well as ginger candy and peppermint oil for nausea. R. 404.

On May 7, 2019, Shanna saw Dr. Dehli for a follow up appointment. R. 575. She reported a slight improvement with her gastroparesis symptoms due to a dietary modification and Dexilant. *Id.* She also reported that she stopped taking Motegrity because she could not tolerate it. *Id.* She still had persistent nausea. R. 576.

On June 19, 2019, Shanna visited Dr. Schaible, a chiropractor at Smith Mountain Lake Chiropractic Center, for back pain.[5] R. 664. She reported pain in between her shoulders, as well as neck pain, joint pain, difficulty chewing, nervousness, numbness, dizziness, cold/tingling extremities, stress, fatigue, poor/excessive appetite, frequent nausea, diarrhea, constipation, abdominal pain, and gas/bloating after meals. R. 665. She also said that she feels an occasional sharp pinch on rotation, some pain in her upper shoulder, numbness in her toes, and has a generally sore, achy, throbbing pain that increases throughout the day. *Id.* Shanna said that she does some heavy lifting, and that

---

[5] Chiropractors are not an "acceptable medical source." 20 C.F.R. § 404.1502. However, once the existence of a medically determinable impairment is established by objective medical evidence from accepted medical sources, the Social Security Administration uses evidence from "all other sources," including chiropractors, in the sequential evaluation process. *See* DI 22505.003 Evidence from an Acceptable Medical Source (AMS) SSA POMS DI 22505.003.

ibuprofen helps some. *Id.* Dr. Schaible observed that Shanna's range of motion in her thoracolumbar spine was diminished on flexion, extension, and left and right lateral flexion. R. 667. He diagnosed her with subluxation complex in the thoracic, lumbar, and sacral region. R. 668.

On July 7, 2019, Shanna presented to Dr. Meador in the emergency department at Bedford Memorial Hospital for shortness of breath and dizziness that had persisted for three days. R. 741. Dr. Meador did not observe Shanna working harder to breathe, nor any tenderness in her back or abdomen. R. 742. Shanna's EKG, chest x-rays, and blood work were unremarkable. R. 741–51. Based on the doctor's evaluation, Shanna was discharged but instructed to return if her symptoms worsened. R. 742.

On July 8, 2019, Shanna saw Dr. Cox to follow up on her hospital visit. R. 493. Dr. Cox opined that Shanna's dizziness was orthostasis caused by dehydration, given Shanna's gastroparesis and that she was only drinking one bottle of water per day, which is "significantly deficient" water intake. R. 496. He referred her for an MRI of her brain for possible vertigo. R. 496. The results of the MRI were unremarkable. R. 738. He also reviewed the x-rays of her back and did not observe any acute process or instability. *Id.* He opined that her back pain was likely a neurological condition related to nerve compression due to childbirth. *Id.* He also advised Shanna to stop taking birth control pills because they could be linked to her gastroparesis symptoms. *Id.*

On July 30, 2019, Shanna had a colonoscopy; all findings were normal, except for a 5-millimeter benign polyp. R. 406–08. On August 7, 2019, Shanna visited Dr. Dehli to review the laboratory work she recently had done on July 7 (EKG, x-rays, and blood work), July 8 (x-rays), July 12 (MRI), and July 30 (colonoscopy). Shanna reported that she had been drinking more fluids, felt less lightheaded, and had improved overall. R. 521. She

said that her stomach was doing better, but she still felt discomfort off and on and still had excessive belching. *Id.*

On December 11, 2019, Shanna saw Dr. Dehli for right knee pain due to an injury she sustained while doing yard work. R. 474. Dr. Dehli assessed knee strain and patella-femoral syndrome. R. 472.

On February 10, 2020, Shanna saw Dr. Dehli for her chronic stomach issues, including belching, abdominal pain, cramping, early satiety, and coldness and numbness in her hands and feet. R. 422. Dr. Dehli observed a small umbilical hernia. *Id.* His assessment was GERD, gastroparesis, neuropathy, adverse effects of medication, myalgia, vitamin D deficiency, and umbilical hernia. R. 420–21. Dr. Dehli opined that Shanna likely had neuropathy and not Raynaud's because she did not have blanching. R. 421.

On June 30, 2020, Shanna presented to Dr. Wentworth at UVA Digestive Health Center for an evaluation of gastroparesis. R. 675. She explained that she experiences flares of sharp pain spreading across her abdomen, infrequent bowel movements, and constipation. R. 675. She said that she feels relief when she lays on the floor and worsening pain when she sits up. *Id.* She denied early satiety and nausea and reported that her appetite was good. *Id.* She stated that fruits, vegetables, and water make her symptoms worse, while greasy foods make her feel better. *Id.* Dr. Wentworth observed that Shanna's abdomen was tender in the epigastric region, but was otherwise unremarkable. R. 676–77. Dr. Wentworth opined that Shanna's symptoms are not typical for gastroparesis, and more typical for functional dyspepsia, aerophagia, and/or supragastric etiology. R. 677–78. He also opined that she may have Raynaud's phenomenon. R. 678. He recommended another gastric emptying study and a CT to rule out any obstructive pathology. R. 678. The CT scan was unremarkable and termed a "normal study." R. 682–87.

On November 13, 2020, Dr. Jack Hutcheson, a medical consultant with Disability Determination Service, issued a Disability Determination Explanation for Shanna. R. 96. He found that Shanna's gastrointestinal disorders were a severe impairment. R. 99. He found that Shanna's subjective statements about her symptoms were only partially consistent with the medical evidence, noting that the severity of her symptoms seems disproportionate to what would be expected based on the medical evidence. R. 101. He opined that Shanna had the capacity to do a medium range of work, including frequently lifting or carrying 25 pounds; occasionally lifting or carrying 50 pounds; sitting, standing, or walking 6 hours in an 8-hour workday; frequently stooping, kneeling, crouching, crawling, and climbing ramps and stairs; occasionally climbing ladders; and balancing in an unlimited capacity. R. 101–02. He also found that Shanna does not have manipulative, visual, communicative, or environmental limitations. R. 102.

On April 25, 2021, Nurse Practitioner Benita Bocanegra conducted a medical consultant report. Shanna related her abdominal issues: gastroparesis, stomach pain, constipation, belching, umbilical hernia, and nausea, as well as fatigue and sensitivity to cold in her fingers and toes. R. 707–08. Ms. Bocanegra's exam findings were benign: Shannah's abdomen was soft and not tender, she had normal bowel sounds, no bloating or distention, and had normal sensation in her fingers. R. 711. Her diagnosis was gastroparesis and Raynaud's disease. R. 712. Ms. Bocanegra noted that Shanna had not completed another gastric emptying study as recommended because she had difficulty traveling far away, and that she had not seen a gastrointestinal physician in over a year. R. 707. She found Shanna to be credible as Shanna "gave good effort and there were no inconsistencies." R. 712. Ms. Bocanegra assessed that Shanna had the capacity to lift and carry up to 20 pounds frequently; lift and carry up to 50 pounds occasionally; sit, stand,

or walk about 8 hours; frequently reach, handle, feel, and grasp; and frequently bend, stoop, kneel, and squat. R. 712.

On April 30, 2021, Dr. Cheryl Arenella, a medical consultant with Disability Determination Service, issued a second Disability Determination Explanation for reconsideration findings. R. 104. She found that Shanna's gastrointestinal disorders were a severe impairment. R. 108. She stated that Shanna's subjective statements about her symptoms were only partially consistent with the medical evidence. R. 109. She opined that Shanna had the capacity to do a medium range of work, including frequently lifting or carrying 25 pounds; occasionally lifting or carrying 50 pounds; sitting, standing or walking 6 hours in an 8-hour workday; frequently stooping, kneeling, crouching, crawling, and climbing ramps and stairs; occasionally climbing ladders; and balancing in an unlimited capacity. R. 110–11. She also found that Shanna does not have manipulative, visual, communicative, or environmental limitations. R. 111.

Shanna visited Robert Gump at Tuck Chiropractic clinic on four separate occasions, from November 24, 2021, to December 29, 2021, for neck and back pain. R. 764–67. Dr. Gump recommended an MRI of Shanna's thoracic spine due to her chronic, worsening back pain. R. 761. On January 7, 2021, Shanna visited Dr. Dehli for back pain radiating up from her thoracic spine and down to her buttocks region, and right knee discomfort. R. 761–62. He assessed tightness in her posterior strap muscle, bilateral trapezius muscles, thoracic paraspinal muscle, and lower lumbar paraspinal muscle. R. 763. He also noted tenderness over her thoracic spinous processes, and that forward flexion was limited by tightness. *Id.* He ordered an MRI, the findings of which were unremarkable, showing no acute fracture, subluxation, osseous lesions, or significant

degenerative disc disease. R. 761, 783. He also prescribed Diclofenac and recommended physical therapy. R. 761–62.

On March 12, 2022, Dr. John Daller assessed Shanna's medical impairments as a medical expert. R. 790–93. He listed Shanna's impairments, including fatigue, neuropathy vs. Raynaud's disease, gastroparesis, GERD, and irritable bowel disease. R. 791. He opined that none of Shanna's impairments met or equaled any of the listed impairments, and that she did not have "a disabling need to use the restroom either in frequency or urgency." R. 792–93.

### III.    Administrative Hearing Testimony

At the first administrative hearing on January 13, 2022, Shanna testified that she suffered from constant gastrointestinal pain that caused belching, nausea, and vomiting. R. 73. She testified that when she had episodes or "flare-ups" of pain, she had to lay down for fifteen-minute intervals and go to the restroom several times per day. R. 73–74, 76. She had flare-ups about every other week, and that a flare-up could last multiple days. R. 75. Belching, specifically, impacted her ability to interact with people because the pain worsened when she held in the gas. R. 75–76.

Shanna testified that she had constant pain in the middle of her back and her right knee. R. 76, 78. Her right knee pain worsened when she squatted down or walked up and down stairs. R. 78. Her dizziness, caused by vertigo or orthostasis, was not as bad as it used to be, but she still got dizzy for a few hours approximately once per month. R. 78–79. Her fingers and toes were constantly cold, impacting her ability to do tedious things with her fingers. R. 79–80. She also testified that she always felt fatigued. R. 80.

Shanna testified that she could only sit for thirty minutes and stand for fifteen minutes before her back started feeling stiff, and then she had to walk around for about

an hour or two to stretch her back out. R. 81–82. She could only drive for thirty to forty-five minutes at a time before she needed to pull over and stretch, which she did for about fifteen or twenty minutes. R. 83. The back pain impacted her ability to concentrate, but it did not impact her ability to dress herself, get in or out of the shower, grocery shop, or take care of the household. R. 83–84.

A vocational expert, Mark Hileman, testified that a person in their late 30s with some education beyond high school and capable of light exertional work at approximately two-hour intervals could find and perform work in the national economy as a routing clerk, marker, or office mailroom clerk. R. 90–91. He testified that these jobs do not allow for a "true sit-stand option," meaning that the jobs are primarily performed in a seated position, and it would be difficult to perform in a standing position for more than five minutes per hour without some accommodations. R. 92. Beyond the standard breaks provided at most jobs, Mr. Hileman testified that these jobs could accommodate quick, three- to four-minute bathroom breaks and one absence per month. R. 93. He testified that it would be an issue if the individual took more bathroom breaks, longer bathroom breaks, or had more absences per month. *Id.*

At the second administrative hearing on September 28, 2022, Shanna testified that her gastrointestinal symptoms had stayed the same since the first hearing, with the addition of a few bouts of stomach pain and pressure in the middle of the night. R. 52. She further explained that when she had flare-ups, she had to rush to the bathroom with diarrhea, or felt she needed to use the bathroom and would sit on the toilet for approximately thirty minutes with no result. R. 55–56. As for her back pain, she had been prescribed magnesium and a massaging technique since the first hearing, but said that she still had constant pain. R. 56–58. She could not sit as long as she could at the first

hearing, now only about fifteen to twenty minutes, because of pain in her neck. R. 58. The issues with her hands had not changed since the first hearing. R. 62. She had not performed any work activity since the first hearing besides selling some handmade jewelry to family members. R. 59.

## ALJ FINDINGS

At the first step, the ALJ found that Shanna had not engaged in substantial gainful activity during the period from the alleged onset date of May 29, 2015, through the date last insured of September 30, 2021. R. 20–21. At the second step, the ALJ found that Shanna had the following severe impairments through the date last insured: gastroparesis; irritable bowel syndrome (IBS)/chronic idiopathic constipation; gastroesophageal reflux disease (GERD); neuropathic condition that may be Raynaud's phenomenon; and myalgia. R. 21–25.

As to the third step, the ALJ found that Shanna's impairments, either individually or in combination, did not meet or equal a listed impairment. R. 25–26 The ALJ specifically considered Listings 1.15 (compromise of a nerve root), 1.18 (abnormality of a major joint), 5.06 (inflammatory bowel disease), and 11.14 (peripheral neuropathy) *Id.* The ALJ found that Shanna's IBS, gastroparesis, and GERD do not meet or equal any listed impairment in Section 5.00, and that her neurological condition classified as possible Raynaud's syndrome does not meet or equal any listed impairment in Section 11.00. *Id.* The ALJ concluded that Shanna had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 C.F.R. § 404.1567(b) except with
> ordinary breaks as typically provided by employers at approximately two-
> hour intervals. [Shanna] can occasionally stoop or crouch, but cannot crawl,
> climb, or kneel. [Shanna] can frequently, but not constantly, handle, finger,
> and feel bilaterally. [Shanna] can have no exposure to excessively cold

12

temperatures. [Shanna] may incur up to one absence monthly on average unscheduled and may require brief bathroom breaks of 3–4 minutes each up to one time between each regularly scheduled break period during the workday.

R. 26.

At the fourth step, the ALJ concluded that Shanna was unable to perform any past relevant work through September 30, 2021. R. 34. At the fifth step, the ALJ identified jobs in significant numbers in the national economy that Shanna could have performed, including positions as routing clerk, marker, or office mail room clerk. R. 35. Thus, the ALJ determined that Shanna was not disabled at any time from May 29, 2015, the alleged onset date, through September 30, 2021, the date last insured. R. 36. Shanna's appeal to the Appeals Council was denied on September 11, 2023. R. 1–7. This appeal followed.

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Shanna failed to demonstrate that she was disabled under the Act.[6] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (cleaned up); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). While substantial evidence is a

---

[6] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work; instead, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

somewhat deferential standard, the Court does not "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess about how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## DISCUSSION

Shanna argues that the ALJ erred by (1) failing to properly assess her physical impairments and perform a function-by-function analysis and (2) failing to properly assess her subjective allegations. *See* ECF No. 13 at 3–16.

### I.    The ALJ did not create a logical bridge between the evidence and his RFC findings regarding Shanna's required bathroom access.

First, Shanna argues that the ALJ erred by failing to properly consider Shanna's physical symptoms and failed to explain how he arrived at his RFC findings. ECF No. 13

at 19. Specifically, Shanna argues that the ALJ failed to explain how his RFC findings accommodate her severe impairments and the frequency in which she experiences her symptoms. *Id.* On this point, Shanna is particularly concerned with the ALJ's failure to explain his conclusion that Shanna could incur only one unscheduled absence per month and would only need one bathroom break of three to four minutes between regularly scheduled breaks. *Id.* The Commissioner argues that the ALJ conducted the appropriate function by function analysis because he explained his conclusions by citing to objective medical evidence in his narrative discussion. *See* ECF No. 15 at 9. Thus, the Commissioner argues that the ALJ's findings are supported by substantial evidence. The Commissioner does not address Shanna's argument that the ALJ failed to explain his conclusion regarding her allowable absences and bathroom breaks.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In his analysis, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. *See id.* at *7. Importantly, the ALJ must explain his conclusions by citing to specific medical facts and nonmedical evidence, such as daily activities and observations. *See id.* ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion . . .").

The claimant's work-related abilities must be explained on a "function-by-function" basis, meaning that the ALJ must consider all the claimant's impairments and

determine how they affect her ability to work. *See id.* at *1; *see also Monroe v. Colvin*, 826 F.3d 176, 187–88 (4th Cir. 2016). There is no *per se* rule that an ALJ's failure to perform a function-by-function analysis requires remand. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). For example, remand is not required when the ALJ does not discuss functions that are "irrelevant or uncontested," but it may be appropriate where the ALJ fails to discuss a function despite contradictory evidence in the record. *Id.*

The Fourth Circuit explained that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The logical explanation component "is just as important as the other two," and "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Id.* A record of the basis for the ALJ's ruling is a "necessary predicate to engaging in substantial evidence review," and if "the reviewing court has no way of evaluating the basis for the ALJ's decision," then the proper course is remand. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

In *Dowling v. Commissioner of Social Security Administration*, the Fourth Circuit addressed an ALJ's failure to analyze whether the claimant's RFC was impacted by her need to take frequent bathroom breaks, and remanded with instructions for the ALJ to "evaluate the frequency at which [the claimant] needed to use the bathroom and analyze how that restriction impacted her ability to work." 986 F.3d 377, 389 (4th Cir. 2021). The *Dowling* progeny hold that if bathroom frequency is at issue, the ALJ should make specific findings as to whether the claimant requires additional bathroom breaks, and explain the evidence supporting those findings. *See*, *e.g.*, *Bartley v. Kijakazi*, No. 3:21CV401, 2022 WL 1416425, at *2 (W.D.N.C. May 4, 2022) (remanding where ALJ included accommodation for plaintiff to have "ready access to a restroom" in RFC but

failed to make specific "findings as to how frequently and for what duration" plaintiff needed restroom breaks); *Malone v. Kijakazi*, No. 4:22-cv-04189, 2023 WL 6157347, at *4 (D.S.C. Sept. 21, 2023) (remanding where the "only time restroom access [was] mentioned [was] in the determination" and it was "unclear what evidence was accorded more importance in formulating the restroom access element" of the RFC); *see also Davis v. Comm'r of Soc. Sec.*, No. 2:10-CV-30, 2011 WL 442118, at *1 (N.D.W. Va. Feb. 2, 2011) (remanding because ALJ included "a required accommodation of placing the plaintiff close to the bathroom" in RFC, yet failed to make "specific findings regarding the frequency and duration of plaintiff's need for the bathroom").

Here, the record contains some evidence that puts Shanna's workplace bathroom access at issue. The medical evidence shows that Shanna complained of diarrhea and constipation at her doctor's appointments. R. 401, 621, 665, 675. However, a medical expert found that Shanna did not have a "disabling need to use the restroom either in frequency or urgency." R. 793. At the hearing before the ALJ, Shanna testified that when her gastrointestinal issues flared up, she had to use the restroom multiple times per day, sometimes for thirty minutes at a time. R. 55–56, 76. The vocational expert testified that most employers permit quick bathroom breaks of three to four minutes in between standard breaks, but that extra breaks or longer breaks would be an issue. R. 93.

The ALJ's discussion of any evidence regarding Shanna's incontinence or need to use the restroom was brief and not correlated to the restroom access mentioned in the RFC. He noted Shanna's complaint of constipation once in the narrative and did not consider it a chief symptom. R. 29, 31. He did not discuss her testimony about how frequently she needed to use the restroom, nor the vocational expert's testimony regarding typical bathroom breaks offered in the workplace. The ALJ acknowledged the

medical expert's opinion that Shanna did not have a disabling need to use the restroom, but only gave it slight weight because the expert failed to cite evidence to support it. R. 34, 793. Despite the very brief discussion of these issues, the ALJ determined that Shanna "may require brief bathroom breaks of 3–4 minutes each up to one time between each regularly scheduled break period during the workday" in the RFC. R. 26.

Such sparse discussion and analysis of Shanna's need for bathroom breaks is a failure of the ALJ to build a logical bridge between the evidence and the RFC determination. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The only semblance of an explanation is the ALJ's statement that Shanna may need this accommodation "[*a*]*s a result of her gastrointestinal symptoms*." R. 32 (emphasis added). This falls short of the explanation required for a court to engage in meaningful review. It is unclear what evidence was accorded more importance in formulating the restroom access element of the RFC and the ALJ did not grapple with the contradictory evidence in the record regarding whether Shanna has a disabling need to use the restroom.

While the ALJ included a bathroom accommodation in the RFC, which logically suggests a finding that Shanna had a disabling need to use the restroom, the fact that the accommodation is no greater than the standard bathroom breaks offered by the average employer suggests the contrary. Thus, this court is "left to guess" at how the ALJ arrived at this conclusion, and so remand is warranted. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## II.    The ALJ did not err in evaluating Shanna's subjective allegations.

Next, Shanna argues that the ALJ failed to properly consider her subjective allegations of pain. First, she argues that the ALJ used the wrong standard of review by "requiring her to objectively prove the intensity of her pain," leading him to impermissibly

discredit her allegations due to a lack of objective findings. ECF No. 13 at 21, 24. Second, she argues that the ALJ's assessment of her subjective allegations are conclusory and not supported by substantial evidence. *Id.* at 25. The Commissioner argues that the ALJ properly evaluated Shanna's subjective complaints by explaining the inconsistencies in her allegations and the evidence in the record. ECF No. 15 at 15.

An ALJ must assess a claimant's subjective complaints about the extent of her functional limitations considering the objective medical evidence and other factors, including her treatment history, medications, work history, and daily activities. 20 C.F.R. §§ 404.1529(c), 416.929(c). He must engage in a two-step process in which he first determines whether there is an underlying medically determinable mental or physical impairment that could reasonably be expected to produce the claimant's pain or other symptoms, and then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). In making this determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 82 Fed. Reg. 49462-03 (oct. 25, 2017). An ALJ's assessment of the credibility of a claimant's subjective complaints are afforded a high level of deference on review and are "virtually unreviewable" on appeal. *Darvishian v. Geren*, 404 F. App'x 822, 831 (4th Cir. 2010).

Here, at the first step, the ALJ found that Shanna's medically determinable impairments could reasonably be expected to cause her alleged symptoms. R. 31. At the

second step, the ALJ found that Shanna's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

Primarily relying on the Fourth Circuit's opinion in *Arakas*, Shanna argues that the ALJ impermissibly discredited her subjective allegations of pain due to a lack of objective evidence. ECF No. 13 at 24. In *Arakas*, the Court reversed an ALJ for discrediting a claimant's statements regarding the severity, persistence, and limiting effects of her symptoms, chiefly caused by fibromyalgia, because he did not find them "completely consistent with the objective evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). The Court held that the claimant was entitled to rely exclusively on her subjective allegations that her symptoms were so continuous or severe that it prevented her from working a full eight-hour day because "while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity.'" *Id.* The Court held that an ALJ errs when he discredits a claimant's complaints based on the lack of objective evidence corroborating them, as that "improperly increase[s] [the claimant's] burden of proof." *Id.*

Notwithstanding the Fourth Circuit's instruction on this issue, district courts in this circuit, including this court, will affirm an ALJ's evaluation of a claimant's subjective allegations if given proper weight considering other evidence in the record. *See, e.g.*, *Debra S. v. O'Malley*, No. 7:23-cv-161, 2024 WL 923008, at *13 (W.D. Va. Mar. 4, 2024). After all, the ALJ is required to "examine the entire case record, *including the objective medical evidence*" in his evaluation of the intensity, persistence, and limiting effects of a

claimant's symptoms. SSR 16-3p, 82 Fed. Reg. 49462-03 (oct. 25, 2017) (emphasis added).

Shanna argues that the ALJ improperly required her to "objectively prove the intensity of her pain" as prohibited under *Arakas*. ECF No. 13 at 21, 24. Shanna further argues that the ALJ assessment of her subjective allegations is not supported by substantial evidence because he failed to make a logical connection between the cited evidence and the conclusions in his RFC. *Id.* at 25. She submits that he ignored important evidence such as her testimony and other statements regarding the extent to which she can perform daily activities. *Id.* at 26.

Shanna's arguments are not persuasive. The ALJ properly assessed her subjective complaints. First, he considered Shanna's function reports where she attested to the daily activities she was capable of performing, paying attention to both her capabilities and limitations. R. 27, 283–90, 302–09. He acknowledged the complaints of pain in her stomach, back, hands, fingers, and neck that she endorsed in a pain questionnaire, as well as the symptoms and limitations she described in her hearing testimony. ECF No. 27. Unlike the ALJ in *Arakas*, who failed to consider significant testimony by the claimant, the ALJ here appropriately considered all of Shanna's testimony regarding her pain and limitations, as well as other her subjective allegations documented in the record. The ALJ's consideration of objective and contradictory evidence does not persuade the undersigned that he imposed a heightened requirement for the evidence to objectively prove the intensity of Shanna's pain.

Based on the evidence in the record, the ALJ reasonably concluded that Shanna's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with other evidence in the record. He did not mischaracterize or ignore her

subjective complaints, and instead, appropriately identified where her complaints contradicted other evidence in the record. For example, he found inconsistencies between Shanna's statement that she was unable to work and another statement where she reported that she was doing landscaping and heavy lifting; between her characterization of her symptoms as nearly debilitating and evidence that she not had treatment for a significant period; and other evidence that many of Shanna's treatments were with primary care doctors who made benign, normal, or "course stable" findings. R. 30–31.

Finally, Shanna argues that the ALJ erred by failing to consider whether her pain is so continuous and severe that it prevents her from working a full eight-hour workday in the RFC. ECF No. 13 at 21. The ALJ's failure to explicitly discuss Shanna's capability to work a full workday is not a reversible error because the ALJ's cited evidence, analysis, and conclusion demonstrate that he appropriately considered Shanna's subjective allegations of pain when formulating the RFC. While two state agency physicians found that Shanna could perform medium exertion work, the ALJ restricted Shanna to light work specifically based on her complaints of pain, as well as the evidence of delayed gastric emptying. R. 33. The undersigned finds no error in the ALJ's assessment of Shanna's subjective allegations of her limitations. The ALJ's assessment in this regard is supported by substantial evidence.

## **CONCLUSION**

The ALJ's evaluation of Shanna's subjective allegations is supported by substantial evidence; however, remand is warranted because the court cannot conduct a proper review of the ALJ's RFC finding regarding Shanna's required bathroom access. Therefore, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and

**REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative review, and the case be **DISMISSED** from the Court's active docket.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, United States District Judge.

The Clerk is directed to serve copies of this Report and Recommendation to all counsel of record and any unrepresented parties.

Entered:  February 5, 2025

C. Kailani Memmer
United States Magistrate Judge